**CHASAN & WALTON, LLC**
ANDREW M. CHASAN, ISB #2100
E-mail: andrew.chasan@chasanwalton.com
TIMOTHY C. WALTON, ISB #2170
E-mail: timwalton2000@hotmail.com
1459 Tyrell Lane
Boise, Idaho 83706
Phone: 208-345-3760
Fax: 208-345-0288

**DUMAS & VAUGHN, LLC**
GILION C. DUMAS, ISB #8176
E-mail: gilion@dumasandvaughn.com
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Phone: 503-616-5007
Fax: 888-396-3226
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Mark Doe 1, an individual; Mark Doe 2, an individual; Mark Doe 3, an individual; Mark Doe 4, an individual; Mark Doe 5, an individual; Mark Doe 6, an individual; Mark Doe 7, an individual; Mark Doe 8, an individual; Mark Doe 9, an individual; Mark Doe 10, an individual; Mark Doe 11, an individual; and Mark Doe 12, an individual,<br><br>        Plaintiffs,<br><br>    v.<br><br>MOUNTAIN WEST COUNCIL, INC., BOY SCOUTS OF AMERICA, p/k/a/ ORE-IDA COUNCIL, INC., BOY SCOUTS OF AMERICA, an Idaho corporation; INLAND NORTHWEST COUNCIL OF BOY SCOUTS OF AMERICA, p/k/a LEWIS & CLARK COUNCIL OF BOY SCOUTS OF AMERICA, a foreign corporation registered to do business in Idaho; GRAND TETON COUNCIL OF THE BOY SCOUTS OF AMERICA, INC., an Idaho | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br>*Fraud and Constructive Fraud*<br><br>**Jury trial demanded** |

**COMPLAINT - 1**

corporation; CORPORATION OF THE
PRESIDING BISHOP OF THE CHURCH OF
JESUS CHRIST OF LATTER-DAY SAINTS, a
foreign corporation sole registered to do business
in Idaho; and CORPORATION OF THE
PRESIDENT OF THE CHURCH OF JESUS
CHRIST OF LATTER-DAY SAINTS AND
SUCCESSORS, a foreign corporation registered
to do business in Idaho,

Defendants.

COMES NOW the above-named Plaintiffs, by and through their attorneys of record, and

for causes of action against the above-named Defendants, allege as follows:

## IDENTITY OF THE PARTIES

1.

Plaintiffs' true names are not stated in this Complaint to protect them from further

emotional harm and to protect their privacy because this Complaint alleges intimate details of

child sexual abuse. Their true names will be provided to Defendants, and the Court as may be

required by law.

2.

Plaintiff Mark Doe 1 is an adult male resident of Utah. At all relevant times, he was a

resident of Idaho. He was born in 1956.

3.

Plaintiff Mark Doe 2 is an adult male resident of Idaho. At all relevant times he was a

resident of Idaho. He was born in 1952.

4.

Plaintiff Mark Doe 3 is an adult male resident of Idaho. At all relevant times he was a

resident of Idaho. He was born in 1956.

**COMPLAINT - 2**

5.

Plaintiff Mark Doe 4 is an adult male resident of Idaho. At all relevant times he was a resident of Idaho. He was born in 1956.

6.

Plaintiff Mark Doe 5 is an adult male resident of Idaho. At all relevant times he was a resident of Idaho. He was born in 1969.

7.

Plaintiff Mark Doe 6 is an adult male resident of Washington. At all relevant times he was a resident of Idaho. He was born in 1957.

8.

Plaintiff Mark Doe 7 is an adult male resident of Idaho. At all relevant times he was a resident of Idaho. He was born in 1969.

9.

Plaintiff Mark Doe 8 is an adult male resident of Alaska. At all relevant times he was a resident of Idaho. He was born in 1957.

10.

Plaintiff Mark Doe 9 is an adult male resident of Idaho. At all relevant times he was a resident of Idaho. He was born in 1960.

11.

Plaintiff Mark Doe 10 is an adult male resident of Idaho. At all relevant times he was a resident of Idaho. He was born in 1967.

/ / /

/ / /

**COMPLAINT - 3**

12.

Plaintiff Mark Doe 11 is an adult male resident of Idaho. At all relevant times he was a resident of Idaho. He was born in 1965.

13.

Plaintiff Mark Doe 12 is an adult male resident of Idaho. At all relevant times he was a resident of Idaho. He was born in 1968.

14.

Defendant Mountain West Council, Inc., Boy Scouts of America ("Defendant Mountain West Council"), p/k/a Ore-Ida Council, Inc., Boy Scouts of America is an Idaho non-profit corporation with its principal place of business in Boise, Idaho. Defendant Mountain West Council previously operated as the Ore-Ida Council, Inc., Boy Scouts of America and Snake River Council, Inc., Boy Scouts of America, which merged on or about March 1, 2020 to form Defendant Mountain West Council, Inc. On information and belief, the Mountain West Council now also includes some Scout districts and troops that previously might have been under the jurisdiction of the Tendoy Area Council, Inc., which has been an inactive entity since 1994. At all relevant times, Defendant Mountain West Council operated under the actual control of Boy Scouts of America ("BSA") to provide a youth program for boys in Idaho known as "Boy Scouts" or "Scouting," and was an actual or apparent agent of BSA.

15.

Defendant Inland Northwest Council of Boy Scouts of America ("Defendant Inland NW Council"), p/k/a Lewis & Clark Council of Boy Scouts of America, is a Washington non-profit corporation registered to do business and operating in Idaho. Defendant Inland NW Council previously operated as the Lewis & Clark Council of the Boy Scouts of America and Idaho

Panhandle Council, which merged on or about 1992 to form Defendant Inland NW Council. At all relevant times, Defendant Inland NW Council operated as the Lewis & Clark Council, under the actual control of BSA to provide a youth program for boys in Idaho known as "Boy Scouts" or "Scouting." At all relevant times, Defendant Inland NW Council was an actual or apparent agent of BSA.

16.

Defendant Grand Teton Council of the Boy Scouts of America, Inc. ("Grand Teton Council") is an Idaho non-profit corporation. On information and belief, the Grand Teton Council now also includes some Scout districts and troops that previously might have been under the jurisdiction of the Tendoy Area Council, Inc., which has been an inactive entity since 1994. At all relevant times, Defendant Grand Teton Council operated under the actual control of BSA to provide a youth program for boys in Idaho known as "Boy Scouts" or "Scouting," and was an actual or apparent agent of BSA.

17.

Defendant Mountain West Council, Defendant Grand Teton Council, and Defendant Inland NW Council will be referred to jointly throughout the Complaint as "Defendant Councils."

18.

At all times relevant to this Complaint, Defendant Corporation of the Presiding Bishop of the Church of Jesus Christ Of Latter-Day Saints was a foreign religious corporation sole of the Church of Jesus Christ of Latter-Day Saints ("the Church") incorporated and with its principal place of business in Utah, and operating in Idaho.

/ / /

**COMPLAINT - 5**

19.

At all times relevant to this Complaint, Defendant Corporation of the President of the Church of Jesus Christ of Latter-Day Saints and Successors was a foreign religious corporation of the Church incorporated and with its principal place of business in Utah, and operating in Idaho. At all relevant times, the Church Defendants sponsored Boy Scout troops in Idaho, in conjunction with Defendant Councils and BSA.

20.

The Defendant Corporation of the Presiding Bishop and Defendant Corporation of the President will be referred to jointly throughout this Complaint as "Church Defendants."

## JURISDICTION AND VENUE

21.

This Court has jurisdiction over Plaintiffs' claims under 28 U.S. Code § 1334(b) because this case arises in or is related to *In re: Boy Scouts of America and Delaware BSA, LLC,* U.S. Bk. Ct. (Delaware Dist.) No. 20-10343 and *Boy Scouts of America v. A.A., et al.,* U.S. Bk. Ct. (Delaware Dist.) No. 20-50527 ("BSA's Chapter 11 bankruptcy case") for at least the following reasons:

a. Plaintiffs assert claims to recover monetary damages based upon tortious actions or omissions committed by BSA agents or otherwise related parties;

b. BSA and the non-debtor Defendants named in this case share an identity of interest such that a claim against these Defendants may be, in effect, a claim against BSA's estate;

c. On information and belief, BSA and non-debtor Defendants, in many instances, are parties to shared insurance;

d.   The claims and allegations against non-debtor Defendants are inextricably intertwined with the claims and allegations asserted against BSA in its bankruptcy such that the case is "related to" BSA's Chapter 11 case. The claims and allegations arise out of a common nucleus of operative facts and raise substantially similar questions of law; and

e.   All Defendants are named as "BSA Related Parties" in BSA's Chapter 11 bankruptcy case, "Second Stipulation and Agreed Order," Dkt. 77 (June 9, 2020), at Exhibit 2, p. 6.

22.

Venue is proper in this judicial district under 28 U.S. Code § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred here.

**ORGANIZATION OF SCOUTING**

23.

Defendants invited boys, including Plaintiffs, to participate in Scouting, including Scouting activities such as camping and hiking trips.

24.

BSA was and is a vertically-integrated organization. The national BSA organization was at the top of the structure. BSA national established goals, standards, and rules for leaders at the lower levels to follow, and BSA national relied upon local employees and volunteers to implement its goals, standards, and rules. The lower levels of BSA included sponsoring organizations (like the Church Defendants), local councils (like Defendant Councils), troop committees, and troops.

/ / /

**COMPLAINT - 7**

25.

Local councils, generally at the state or regional level, such as Defendant Councils, jointly administered and controlled, with BSA, the Scouting program at the state/regional level.

26.

Defendant Councils and BSA organized Scouting into "troops" at the local level. Defendant Councils and BSA operated all troops relevant to Plaintiffs' allegations in Idaho. These troops were officially sanctioned BSA troops that participated in activities such as group meetings, camping, hiking, and earning "Merit Badges."

27.

Defendants approved, trained, and supervised, adult Scout volunteers (including troop leaders known as "Scoutmasters" and "Assistant Scoutmasters") and paid Scout employees.

28.

Organizations, such as the Church Defendants, "sponsored" local Scout troops by assisting with selecting adult Scout volunteers for the troops, supervising those adult Scout volunteers, providing meeting locations for the troops, creating additional rules applicable to the troops, ensuring that BSA's and the local councils' rules and guidelines were followed, and providing additional support and resources for the troops.

29.

At all relevant times, Scouting was an integral part of the Church Defendants' program for raising, teaching, and guiding boys and men within the Church. Scouting was the official program for boys in the Church, and many boys growing up in the Church were required or strongly encouraged to join Scouting. Wards were the basic ecclesiastical unit of the Church, and each ward was presided over by a Bishop. The Bishop had many tasks including, on

information and belief, selecting and supervising Scout leaders within the Church. On information and belief, every ward was supposed to maintain a Scout troop. The individual wards "sponsored" Boy Scout troops.

30.

Defendant Mountain West Council and BSA selected and approved Robert Elliott and Don Cromwell as adult Scout volunteers for various troops in Idaho. At all relevant times, these men were actual or apparent agents of Defendant Mountain West Council and BSA.

31.

Defendant Mountain West Council, Defendant Grand Teton Council, the Church Defendants, and BSA selected and approved Jon Roundy as an adult Scout volunteer for various troops in Idaho. At all relevant times, Roundy was an actual or apparent agent of Defendant Mountain West Council, Defendant Grand Teton Council, the Church Defendants, and BSA.

32.

Defendant Mountain West Council, the Church Defendants, and BSA selected and approved Larren Arnold as an adult Scout volunteer for various troops in Idaho. At all material times, Arnold was an actual or apparent agent of Defendant Mountain West Council, the Church Defendants, and BSA.

33.

Defendant Inland NW Council and BSA selected and approved Lawrence Libey as an adult Scout volunteer for Troop 156 in Lewiston, Idaho. At all relevant times, Libey was an actual or apparent agent of Defendant Inland NW Council and BSA.

/ / /

/ / /

COMPLAINT - 9

34.

Defendants authorized and empowered the adult Scout volunteers identified above to perform all the duties of troop leaders, including but not limited to providing instruction, counseling, and physical supervision of Scouts; educating Scouts in morality, patriotism, character-building, obedience, and various other life skills; mentoring and befriending Scouts; and enforcing rules governing Scouts' participation in Scouting. Defendants knew that, as part of their duties and expectations as troop leaders, these volunteers would be in a position of trust, confidence, respect, and authority over Scouts, including Plaintiffs.

35.

Defendants retained the right to control, and had actual and apparent control of the means, methods, and physical details of troop leaders' performance of the duties described above. As part of their duties as troop leaders, these volunteers used their positions to gain the trust and confidence of Plaintiffs to spend large periods of time alone with Plaintiffs, or with Plaintiffs and other Scouts, with no other adults supervising. These volunteers performed their duties as troop leaders in connection with their agency relationship with Defendants, and their duties generally were of a kind and nature that these volunteers were required to perform as troop leaders.

**DEFENDANTS' KNOWLEDGE OF SEXUAL ABUSE IN SCOUTING**

36.

Beginning as early as the 1910s, BSA regularly received reports and information from its local Councils, like Defendant Councils, and agents, of adult Scouting volunteers and professional Scouters sexually abusing Scouts. Based on these reports, BSA created a file system now known as the "Ineligible Volunteer" files ("IV files") or "Volunteer Screening" files

to attempt to track a variety of transgressions by adult volunteers, including volunteers that sexually abused Scouts. BSA categorized IV files according to the type of transgression committed, labeling IV files that contained allegations of child sexual abuse as "Perversion" files. The IV Files generally contain detailed factual information about the circumstances under which child sexual abuse occurred in Scouting. The number of IV Perversion files that still exists significantly underrepresents the actual number of IV Perversion files and of adult Scout leaders that molested Scouts for many reasons, including that BSA destroyed many of the IV files created before Plaintiffs were abused, and because many children did not report their sexual abuse.

37.

These IV Files were regularly utilized by local councils, including Defendant Councils.

38.

The earliest existing IV File from Idaho is from Lewiston, Idaho in 1962. The next existing IV File from Idaho is for one of the repeat perpetrators named in this case, Robert F. Elliott, from 1971, even though the IV File indicates Defendant Mountain West Council knew of Elliott's dangerousness to Scouts by 1969. Several other IV Files exist from the 1970s and early 1980s describing child sexual abuse occurring in Scouting in Idaho, based on information received from Idaho local councils like Defendant Councils. Based on the information in the IV Files, Defendant Councils and BSA knew that child molesters were using Scouting to gain access to and gain the trust of Scouts, including Plaintiffs, in order to molest them.

39.

Defendant Inland NW Council and BSA also had specific knowledge by 1968 or 1969 of perpetrator Lawrence Libey's sexual dangerousness to Scouts. Libey was the Assistant

Scoutmaster for Troop 156 in Lewiston, Idaho in or around 1968 or 1969. Within a short time

after Libey became the Assistant Scoutmaster, the troop went on a camping trip. Libey had a

minor Scout sleep in his tent with him, alone. The Scoutmaster of Troop 156 at the time did not

approve and reported the incident to the sponsoring organization. The board chose Libey to lead

the troop instead of the reporting Scoutmaster. Libey then became the sole Scoutmaster of Troop

156.

### 40.

Defendant Mountain West Council and BSA had specific knowledge by 1969 of

perpetrator Robert Elliott's sexual dangerousness to Scouts. According to BSA's own IV File on

Elliott, created in 1971, Elliott served in the Air Force, and Air Force officers warned the District

Scout Executive in 1969 that Elliott should not be allowed to associate with the Boy Scouts of

America. Defendant Mountain West Council admitted taking "no action." Defendant Mountain

West Council continued receiving reports on "numerous occasions" about Elliott's "unorthodox

or strange behavior" throughout 1970. Although Defendant Mountain West Council supposedly

tried to keep him away from "boy programs," Defendant Mountain West Council did not remove

him from Scouting or report him to law enforcement. Defendant Mountain West Council

continued to receive reports about "very questionable situations involving Scouts" through 1971

until Defendant Mountain West Council and BSA finally removed him from Scouting.

### 41.

Defendant Mountain West Council, the Church Defendants, and BSA also had specific

knowledge by at least 1964 of perpetrator Larren Arnold's sexual dangerousness to Scouts. An

adult member of the Nampa 2nd Ward told Bishop Leon Hales that his son, a Scout in Troop

101, had been molested by Arnold, his Scoutmaster. Bishop Hales responded that he would

"take care of it." A week later, Bishop Hale told the father that he had taken care of it. Hales was a member of Defendant Ore–Ida Council (now Mountain West Council) and BSA when this conversation took place. Additionally, between 1971 and 1973, Arnold sexually abused another Scout in Troop 101. At the time, the Scout reported his abuse to Bishop Elvin Hegstrom, Bishop of the Nampa Second Ward.

42.

Defendant Mountain West Council, Defendant Grand Teton Council, the Church Defendants, and BSA also had specific knowledge by the early 1980s that Jon Roundy was sexually dangerous to boys and should not be a Scout leader. As alleged below, Plaintiff Mark Doe 7 was abused by Jon Roundy in approximately 1980/1981-1982/1983. During the course of his abuse, he reported the abuse to Bishop Daron Critchfield of the Second Ward in Oakley, Idaho. To his knowledge, Bishop Critchfield took no remedial action. Roundy continued to volunteer with Scouting and abuse Plaintiff Mark Doe 7 after he reported his abuse to Bishop Critchfield.

43.

By the time Plaintiffs joined Scouting, based on the incident reports in the IV Files generated by BSA's and local councils' volunteers, employees, and agents, as described above, as well as the allegations against Libey, Elliott, Arnold, and Roundy, Defendant Councils and BSA knew that Scouting posed a danger to minor boys because there had been a longstanding, consistent, and widespread problem with adult volunteers sexually abusing Scouts. Prior to Plaintiffs' abuse, Defendant Councils and BSA knew that at least a significant number of Scouts would be sexually abused by Scout leaders every year if Scouting remained structured as it was.

/ / /

**COMPLAINT - 13**

## DEFENDANT COUNCILS' AND BSA'S FRAUD

44.

Defendants and BSA invited boys, including Plaintiff, to participate in Scouting and enter into a commercial relationship, which included Scouts paying an annual membership fee and other fees, and making required purchases, in exchange for participating in Scouting. Defendants and BSA also created a relationship of trust and confidence with Plaintiffs by inviting them to participate in Scouting and acting *in loco parentis* to Plaintiffs during Scouting activities such as camping and hiking trips. Defendants and BSA undertook responsibility for the safety of Scouts such as Plaintiffs and delegated that responsibility to Scout volunteers acting under Defendants' and BSA's control.

45.

Prior to and during Plaintiffs' abuse, Defendant Councils and BSA actively concealed their knowledge that abusers had been joining Scouting for decades to gain access to and sexually abuse boys. When BSA added a volunteer to the IV File list for sexually abusing boys, BSA routinely instructed the Scout Executives of local councils, like Defendant Councils, and other local employees and volunteers to keep secret the reason the volunteer had been dismissed and the existence of the IV Perversion file system. Many times, BSA then deleted, or instructed local employees or volunteers to delete, the volunteer's name from unit applications and rosters. BSA also had a policy of limiting the use of the IV File system to a limited number of employees at the BSA national office and certain local employees and volunteers. BSA had no policies requiring or encouraging its employees to disclose the existence or functioning of the IV File system to the Scouting community and the general public, thereby limiting the use of the IV File system to report allegations of wrongdoing by adult Scout volunteers. Defendant Councils,

despite knowing of the IV File system and BSA's lack of policies and transparency, also had no policies requiring or encouraging local employees and volunteers to disclose the existence or functioning of the IV File system.

46.

Defendants and BSA also actively concealed their knowledge that Scout leaders in Idaho had been accused of sexually abusing Scouts or other boys prior to Plaintiffs' abuse.

47.

Prior to and during Plaintiffs' abuse, Defendants and BSA engaged in a decades-long public relations campaign to represent to the government, the public, and the Scouting community, including Plaintiffs and their families, that Scouting was a safe and morally upright program that was physically, emotionally, and spiritually beneficial for boys. Defendants and BSA additionally represented that the adult Scout leaders, who were their agents, were appropriate and trustworthy mentors and leaders for young boys.

48.

Prior to and during Plaintiffs' abuse, Defendants and BSA conveyed the misrepresentation that adult Scout leaders were appropriate and trustworthy mentors and leaders by selecting, approving, and retaining certain men as adult Scout volunteers. Defendants and BSA further conveyed the misrepresentation that Scouting was a safe and morally upright program for boys by failing to enact or enforce common sense child abuse policies, acknowledge the existence of child sexual abuse in Scouting, or otherwise amend the Scouting program to reduce the prevalence of child sexual abuse in Scouting.

/ / /

/ / /

COMPLAINT - 15

49.

Prior to and during Plaintiffs' abuse, BSA also conveyed the aforementioned misrepresentations through explicit language, such as in newspaper, magazine, radio, and television advertisements; news articles and other media spots; BSA-published publications; and annual reports to Congress. As examples, BSA made specific statements in various editions of the *Boy Scout Handbook*, such as the Scout Oath and Scout Law. In the 1965–1972 *Boy Scout Handbook*, the Scoutmaster is referred to as "a wonderful man" who goes on hikes and goes camping with the Troop, and who "is the friend to whom you can always turn for advice." BSA, *Boy Scout Handbook*, at 94 (7th ed., 3rd printing, 1967). The 1972-1978 *Boy Scout Handbook*, BSA stated, "[o]ver there watching things is your Scoutmaster. He's a great guy. He gives hours of his time to you and the troop. And do you know why? Mostly because he knows Scouting is important to his city and nation. Besides, he is interested in boys." BSA, *Boy Scout Handbook*, at 9 (8th ed., 2nd printing, 1973). This edition also told Scouts: "Your Scoutmaster is interested in and wants to know about you.  Only then can he help you to have fun in Scouting. . . . . . . . [Y]our Scoutmaster wants to know you better. He wants to see what you have to bring to the troop. Soon after joining you will have your first personal growth agreement conference. Here you and your Scoutmaster will sit down for a talk.  Tell him about yourself. . . . . . . . Your Scoutmaster will probably ask about the things you like to do. . . . . . . Your Scoutmaster will also want to know what things you do well." *Id*. at 82-83. This partial list of explicit misrepresentations is not exhaustive.

50.

Defendants utilized BSA's promotion materials, handbooks, and other documents, thus adopting BSA's explicit misrepresentations as their own.

51.

Prior to and during Plaintiffs' abuse, Defendants and BSA also conveyed the

aforementioned misrepresentations through silence because they never warned the Scouting

community, including Plaintiffs, their parents, and the general public that adult Scout volunteers

were not always safe and trustworthy, that they might make sexual advances, or that significant

numbers of them had abused boys in the past. This partial list of omissions is not exclusive.

52.

Defendants and BSA made these misrepresentations with the intent of inducing Plaintiffs

(and other children similarly situated), Plaintiffs' parents (and other parents and guardians

similarly situated), and the public to rely on Defendants' and BSA's misrepresentations so that

they would continue to trust Scouting and adult Scout volunteers, and continue to participate in

Scouting. Defendants and BSA also made the misrepresentations with the intent of shielding

Scouting from scrutiny to ensure that children continued to join, to benefit Defendants' and

BSA's financial positions and reputations.

53.

Defendant Councils and BSA knew the representations about Scouting, Scout leaders in

general, and Libey, Arnold, Roundy, and Elliott, specifically, were false, or made the

misrepresentations with reckless disregard for the truth.

54.

Defendant Councils' and BSA's knowledge of the dangers and prevalence of child sexual

abusers in Scouting and specific knowledge of the sexual abuse accusations against Libey,

Arnold, Roundy, and Elliott constituted a material fact. Had Plaintiffs and their parents been

aware of such dangers, Plaintiffs would not have entered into a relationship, or would not have

continued a relationship, with Defendants and Scouting, or would have taken steps to protect themselves from being abused while in Scouting.

55.

Plaintiffs and their parents justifiably and reasonably relied on Defendants' and BSA's misrepresentations by allowing Plaintiffs to join Scouting, remain in Scouting, and engage in a trust relationship with their Scout leaders. Their reliance was justified because Plaintiffs and their parents could not conduct an investigation of Defendants' and BSA's claims that Scout volunteers were safe and trustworthy, given that the records that would disprove the fraud — *e.g.* BSA's IV files — were not available to the public until decades later; and Plaintiffs and their parents did not know of Defendants' and BSA's knowledge of their abusers.

## CHURCH DEFENDANTS' FRAUD

56.

Plaintiffs Mark Does 5, 7, and 9 reallege and incorporate by reference paragraphs 1-35, 41-42, 44, 46-52, and 55.

57.

Prior to Plaintiffs Mark Doe 5 and Mark Doe 9's abuse by Larren Arnold, Defendant Mountain West Council, the Church Defendants, and BSA knew no later than 1964 that Arnold was sexually dangerous to boys and should not be a Scout leader, as alleged above. Church Defendants actively concealed this knowledge from Scouts and their parents.

58.

As alleged below, Plaintiff Mark Doe 7 was abused by Jon Roundy in approximately 1980/1981-1982/1983. During the course of his abuse, he reported the abuse to Bishop Daron Critchfield of the Second Ward in Oakley, Idaho. To his knowledge, Bishop Critchfield took no

remedial action. Roundy continued to volunteer with Scouting and abuse Plaintiff Mark Doe 7

after he reported his abuse to Bishop Critchfield. Therefore, during Plaintiff Mark Doe 7's abuse

by Roundy, Defendant Mountain West Council, Defendant Grand Teton Council, the Church

Defendants, and BSA knew he was sexually dangerous to boys and should not be a Scout leader.

Church Defendants actively concealed this knowledge from Scouts and their parents.

59.

The Church Defendants also promoted Scouting as a wholesome, safe, and beneficial

program for boys, by sanctioning Scouting as the official program for boys within the Church.

By selecting men within the Church to serve as Scout leaders, the Church Defendants

represented that those men were trustworthy and morally upright leaders and mentors. Young

boys that were members of the Church were required or strongly encouraged to join Scouting as

part of their growth and development within the Church. For example, in 1978, the president of

the Church said that "This [BSA] is not an optional program...Scouting is no longer on trial. It is

an economically, socially, and spiritually sound program." The Church also was the first

chartering organization within BSA. In 1928, the Church named Scouting as the activity

program for Deacons and teachers (boys ages 12-16 years old) in the Church. This partial list of

explicit misrepresentations is not exhaustive.

**ALLEGATIONS SPECIFIC TO PLAINTIFF MARK DOE 1**

60.

Plaintiff Mark Doe 1 realleges and incorporates by reference paragraphs 1-55.

61.

At all relevant times, Plaintiff Mark Doe 1 was a child involved in Scouting. Even

though he was not a registered member of a troop, Defendant Mountain West Council and BSA,

through their agent Scout leader Robert Elliott and other adult volunteers, allowed Plaintiff to participate in Scouting activities with Troop 7 in Boise, Idaho because Plaintiff's older brother was a registered and active Scout member of Troop 7. At all relevant times, Plaintiff was under the care, custody, protection, and/or responsibility of Defendant Mountain West Council and BSA.

62.

In or around 1969, Robert Elliott became the Assistant Scoutmaster or Scoutmaster of Troop 7. When Plaintiff Mark Doe 1 was approximately 13 years old, in or around 1970, Elliott sexually abused him. Elliott's sexual abuse of Plaintiff included Elliott fondling Plaintiff's genitals and mutual oral sex six to seven separate times. The abuse occurred at Elliott's home, on a Scout camping trip, and on a visit to the Mountain Home Air Force Base.

63.

To the best of Plaintiff Mark Doe 1's memory, his abuse always occurred when Plaintiff and his older brother Plaintiff Mark Doe 2 were together with Elliott. Four to five abuse incidents happened at Elliott's home on occasions when both Plaintiff and his older brother Plaintiff Mark Doe 2, a member of Troop 7, spent the night at Elliott's home following or in conjunction with Scouting activities. Elliott isolated the two children in different rooms so they were unaware of what he was doing to each of them. One incident occurred when they were all sleeping in the same tent on a Scout camping trip, and another incident occurred when they all spent the night together at the guesthouse on the Mountain Home Air Force Base.

**ALLEGATIONS SPECIFIC TO PLAINTIFF MARK DOE 2**

64.

Plaintiff Mark Doe 2 realleges and incorporates by reference paragraphs 1-55.

65.

Plaintiff Mark Doe 2 is the older brother of Plaintiff Mark Doe 1.

66.

At all relevant times, Plaintiff Mark Doe 2 was a member of Boy Scout Troop 7 in Boise, Idaho, and was under the care, custody, protection, and/or responsibility of Defendant Mountain West Council and BSA.

67.

When Plaintiff Mark Doe 2 was approximately 16 years old, in or around 1969, he joined Troop 7. In or around 1969, Robert Elliott became the Assistant Scoutmaster or Scoutmaster of Troop 7. Elliott's sexual abuse of Plaintiff began in 1969 and continued through 1970. The abuse included inappropriate touching at Elliott's house after Scouting activities, and one incident of Elliott anally raping Plaintiff on a Scouting camping trip.

68.

The fondling incidents often occurred when Plaintiff Mark Doe 2 and his younger brother Plaintiff Mark Doe 1 spent the night at Elliott's home following or in conjunction with Scouting activities. Elliott isolated the two children in different rooms so they were unaware of what he was doing to each of them.

**ALLEGATIONS SPECIFIC TO PLAINTIFF MARK DOE 3**

69.

Plaintiff Mark Doe 3 realleges and incorporates by reference paragraphs 1-55.

70.

**COMPLAINT - 21**

At all relevant times, Plaintiff Mark Doe 3 was a member of Boy Scout Troop 7 in Boise, Idaho, and was under the care, custody, protection, and/or responsibility of Defendant Mountain West Council and BSA.

71.

When Plaintiff Mark Doe 3 was approximately 12 or 13 years old, in or around 1968 or 1969, he joined Troop 7. In or around 1969, Robert Elliott became the Assistant Scoutmaster or Scoutmaster of Troop 7. In or around 1969, Elliott sexually abused Plaintiff at the First Baptist Church, where the troop meetings were held, after a troop meeting. To the best of Plaintiff's memory at this time, the abuse consisted of mutual masturbation on one occasion.

**ALLEGATIONS SPECIFIC TO PLAINTIFF MARK DOE 4**

72.

Plaintiff Mark Doe 4 realleges and incorporates by reference paragraphs 1-55.

73.

At all relevant times, Plaintiff Mark Doe 4 was a member of Boy Scout Troop 7 in Boise, Idaho, and was under the care, custody, protection, and/or responsibility of Defendant Mountain West Council and BSA.

74.

When Plaintiff Mark Doe 4 was approximately 11 years old, in or around 1967, he joined Troop 7. In or around 1969, Robert Elliott became the Assistant Scoutmaster or Scoutmaster of Troop 7. Elliott sexually abused Plaintiff for approximately two years, from 1969 to 1970, on an almost weekly basis. The abuse included: Elliott watching Plaintiff bathe at Elliott's home; Elliott fondling Plaintiff's genitals; Elliott forcing Plaintiff to masturbate in front of him; and Elliott orally raping Plaintiff. Elliott orally raped Plaintiff on almost every abuse occasion. The

abuse occurred at Elliott's home, when he had Plaintiff spend the night, often with other Scouts, after or in conjunction with Scouting activities.

## ALLEGATIONS SPECIFIC TO PLAINTIFF MARK DOE 5

75.

Plaintiff Mark Doe 5 realleges and incorporates by reference paragraphs 1-59.

76.

At all relevant times, Plaintiff Mark Doe 5 was a member of Boy Scout Troop 113 in Nampa, Idaho, sponsored by the Nampa Eighth Ward, and was under the care, custody, protection, and/or responsibility of Defendant Mountain West Council, the Church Defendants, and BSA.

77.

Plaintiff Mark Doe 5 was raised as a member of the Church and, as such, expected and required to join Scouting. When he was 12 years old, in 1981, he attended Scout camp at Camp Tapawingo, controlled and operated by BSA with Defendant Mountain West Council and other Idaho councils. Several Scout troops also went on the camping trip, and Larren Arnold was one of the Scout leaders assigned to supervise the Nampa troops, including Plaintiff's Troop 113. Arnold sexually abused Plaintiff in Arnold's tent by giving him a massage and rubbing his genitals.

## ALLEGATIONS SPECIFIC TO PLAINTIFF MARK DOE 6

78.

Plaintiff Mark Doe 6 realleges and incorporates by reference paragraphs 1-55.

/ / /

79.

At all relevant times, Plaintiff Mark Doe 6 was a member of Boy Scout Troop 156 in Lewiston, Idaho, and was under the care, custody, protection, and/or responsibility of Defendant Inland NW Council and BSA.

80.

When Plaintiff Mark Doe 6 was approximately 12 years old, in or around 1969, he was a member of Troop 156. Lawrence Libey was the Scoutmaster and/or Assistant Scoutmaster of Troop 156. Libey sexually abused Plaintiff for approximately two years, from 1969 to 1971, on approximately twelve separate occasions. The abuse included fondling, oral rape, and Libey anally raping Plaintiff, and occurred at Libey's trailer home, the Presbyterian Church, and Camp Grizzly, following or in conjunction with Scouting meetings and camping trips.

## ALLEGATIONS SPECIFIC TO PLAINTIFF MARK DOE 7.

81.

Plaintiff Mark Doe 7 realleges and incorporates by reference paragraphs 1-59.

82.

At all relevant times, Plaintiff Mark Doe 7 was a member of Boy Scout Troop 22, in Oakley, Idaho, sponsored by the Second Ward, and was under the care, custody, protection, and/or responsibility of Defendant Mountain West Council and/or Defendant Grand Teton Council, the Church Defendants, and BSA.

83.

When Plaintiff Mark Doe 7 was approximately 11-12 years old, in or around 1980-1981, he joined Troop 22. Jon Roundy was an adult Scout leader for the troop. Roundy sexually abused Plaintiff Oldham for approximately two years, in 1980/1981-1982/1983. The abuse

included: forced masturbation of Roundy, forced oral sex of Roundy at least twice, oral rape of

Plaintiff, and at least one incident of violent anal rape of Plaintiff. The abuse occurred at

Roundy's home before and after Scouting activities, at the Second Ward building in connection

with Scouting activities, at Plaintiff's school, and on a Scout camping trip.

84.

Plaintiff reported Roundy's abuse to Bishop Daron Critchfield. Bishop Critchfield told

Plaintiff that Roundy had a "terrible sickness," and that Plaintiff should pray for Roundy to be

healed and for Plaintiff's own forgiveness for Plaintiff's "impure actions" as well. To Plaintiff's

knowledge, the Bishop took no action against Roundy. Roundy continued to abuse Plaintiff after

Plaintiff reported him to Bishop Critchfield.

## ALLEGATIONS SPECIFIC TO PLAINTIFF MARK DOE 8

85.

Plaintiff Mark Doe 8 realleges and incorporates by reference paragraphs 1-55.

86.

At all relevant times, Plaintiff Mark Doe 8 was a member of Boy Scout Troop 7 in Boise,

Idaho, and was under the care, custody, protection, and/or responsibility of Defendant Mountain

West Council and BSA.

87.

When Plaintiff Mark Doe 8 was approximately 12 or 13 years old, in or around 1969 or

1970, he joined Troop 7. In or around 1969, Robert Elliott became the Assistant Scoutmaster or

Scoutmaster of Troop 7. Elliott sexually abused Plaintiff numerous times on overnight Scouting

trips, like camping trips, and after Scouting meetings. The abuse included extensive mutual

masturbation, oral rape of Plaintiff, and anal rape of Plaintiff. Elliot orally raped Plaintiff at least five times and anally raped him at least four times.

## ALLEGATIONS SPECIFIC TO PLAINTIFF MARK DOE 9

88.

Plaintiff Mark Doe 9 realleges and incorporates by reference paragraphs 1-59.

89.

At all relevant times, Plaintiff Mark Doe 9 was a member of Boy Scout Troop 101 in Nampa, Idaho, sponsored by the Church Defendants' Nampa Second Ward, and was under the care, custody, protection, and/or responsibility of Defendant Mountain West Council, the Church Defendants, and BSA.

90.

Plaintiff Mark Doe 9 was raised as a member of the Church and, as such, expected and required to join Scouting. When Plaintiff was approximately 14 years old, in or around 1974, he joined Troop 101. Larren Arnold was one of the adult Scout leaders for Troop 101. Arnold sexually abused Plaintiff for approximately one year on an almost weekly basis. The abuse included mutual masturbation and mutual oral sex. On one occasion, Arnold forced Plaintiff to engage in mutual masturbation and oral sex with another boy in the troop while Arnold watched. The abuse occurred at Arnold's home, when Plaintiff went there alone or with other Scouts to work on merit badges and other Scout projects.

## ALLEGATIONS SPECIFIC TO PLAINTIFF MARK DOE 10

91.

Plaintiff Mark Doe 10 realleges and incorporates by reference paragraphs 1-55.

/ / /

92.

At all relevant times, Plaintiff Mark Doe 10 was a member of a Cub Scout Pack in Caldwell, Idaho, that met at Van Buren Elementary School, and was under the care, custody, protection, and/or responsibility of Defendant Mountain West Council and BSA.

93.

In the mid to late 1970s, Plaintiff Mark Doe 10 joined Cub Scouts with his littler brother. His older brother was in the corresponding Boy Scout troop. Don Cromwell was one of the pack's and troop's Scout leaders. He drove Plaintiff and his brothers to and from the weekly pack and troop meetings. Cromwell sexually abused Plaintiff in Cromwell's car on at least four occasions, when Cromwell took Plaintiff to get ice cream as a reward for earning a merit badge or helping with a big Scouting project. Over the course of four separate occasions, Cromwell fondled Plaintiff four times, orally raped Plaintiff three times, and attempted to anally rape Plaintiff two times.

## ALLEGATIONS SPECIFIC TO PLAINTIFF MARK DOE 11

94.

Plaintiff Mark Doe 11 realleges and incorporates by reference paragraphs 1-55.

95.

At all relevant times, Plaintiff Mark Doe 11 was a member of a Boy Scout troop in Caldwell, Idaho that met at the local Elks Club, and was under the care, custody, protection, and/or responsibility of Defendant Mountain West Council and BSA.

96.

In the mid to late 1970s, Plaintiff Mark Doe 11 was a member of the Boy Scout troop, and his littler brothers, including Mark Doe 10, were members of the corresponding Cub Scout

Pack, as alleged in paragraph 89. Don Cromwell was the Scoutmaster or Assistant Scoutmaster of the troop. Cromwell sexually abused Plaintiff at least five separate times. The abuse always occurred in Cromwell's car, on the way to or from Scout meetings and events. The abuse included mutual masturbation and forced oral sex of Cromwell at least twice.

## ALLEGATIONS SPECIFIC TO PLAINTIFF MARK DOE 12

### 97.

Plaintiff Mark Doe 12 realleges and incorporates by reference paragraphs 1-55.

### 98.

At all relevant times, Plaintiff Mark Doe 12 was a member of Boy Scout Troop 118 in Nampa, Idaho, sponsored by the First Christian Church of Nampa, and was under the care, custody, protection, and/or responsibility of Defendant Mountain West Council and BSA.

### 99.

When Plaintiff Mark Doe 12 was approximately 11 years old, in the sixth grade, and in or around 1979 or 1980, he joined Boy Scout Troop 118. Plaintiff was the youngest of four boys in his family. His older brothers were also members of Troop 118.

### 100.

In or around the summer of 1981 before his 13th birthday, Plaintiff Mark Doe 12 went on a Boy Scout camping trip with boys from other troops to the Trinity Lakes area. Larren Arnold was one of the adult Scout leaders for the trip. He was not a Scout leader for Plaintiff's troop, but he was a well-known Scout leader in the Nampa community. He was very involved with the Order of the Arrow, of which Plaintiff's brothers were members.    One night, Arnold had Plaintiff and another Scout sleep in his tent with him. Arnold showed Plaintiff his erection, and fondled Plaintiff's genitals repeatedly, until Plaintiff started fighting back, and Arnold stopped.

Plaintiff believes Arnold then began abusing the other boy in the tent, but Plaintiff went to sleep shortly thereafter.

## PLAINTIFFS' INJURIES

### 101.

As a direct and proximate result of Defendant Mountain West Council's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiffs Mark Does 1-4, 8, and 10-12 were seriously injured, and such injuries prevail and will continue to prevail for an indefinite time into the future. The injuries include but are not limited to physical and emotional pain and suffering, mental anguish, and disability, and are permanent, progressive, and disabling. Their damages include general damages and such other damages as are shown by the evidence, to be proved at the time of trial, in an amount now unknown.

### 102.

As a direct and proximate result of Defendant Mountain West Council's and the Church Defendants' oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiffs Mark Does 5 and 9 were seriously injured, and such injuries prevail and will continue to prevail for an indefinite time into the future. The injuries include but are not limited to physical and emotional pain and suffering, mental anguish, and disability, and are permanent, progressive, and disabling. Their damages include general damages and such other damages as are shown by the evidence, to be proved at the time of trial, in an amount now unknown.

/ / /

/ / /

103.

As a direct and proximate result of Defendant Inland NW Council's oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff Mark Doe 6 was seriously injured, and such injuries prevail and will continue to prevail for an indefinite time into the future. The injuries include but are not limited to physical and emotional pain and suffering, mental anguish, and disability, and are permanent, progressive, and disabling. His damages include general damages and such other damages as are shown by the evidence, to be proved at the time of trial, in an amount now unknown.

104.

As a direct and proximate result of each Defendant Mountain West Council, Defendant Grand Teton Council, and the Church Defendants' oppressive, fraudulent, malicious, and/or outrageous conduct as described above and as defined in Idaho Code § 6-1604, Plaintiff Mark Doe 7 was seriously injured, and such injuries prevail and will continue to prevail for an indefinite time into the future. The injuries include but are not limited to physical and emotional pain and suffering, mental anguish, and disability, and are permanent, progressive, and disabling. His damages include general damages and such other damages as are shown by the evidence, to be proved at the time of trial, in an amount now unknown.

105.

Within the past three years Plaintiffs discovered and continue to discover that, throughout the time they were involved in the Scouting program, Defendants perpetrated a fraud related to the dangers of Scout leaders sexually abusing children in the Scouting program. Prior to each Plaintiff's discovery of Defendants' fraud, each Plaintiff did not know and could not know that Defendants' misrepresentations, or lack thereof, regarding the trustworthiness of Scout leaders

and the safety of the Scouting program were false, and that Defendants knew the Scouting program was structured in such a way that sexual abuse of Scouts by Scout leaders was certain to occur to some degree within the Scouting program.

## FIRST CLAIM FOR RELIEF
### *Fraud*

### COUNT I
### Plaintiffs Mark Does 1-4, 8, and 10-12 against Defendant Mountain West Council

106.

Plaintiffs Mark Does 1-4, 8, and 10-12 reallege and incorporate by reference paragraphs 1-55, 60-74, 78-80, 91-100, and 105.

107.

As alleged above, Defendant Mountain West Council committed fraud by active concealment.

108.

As alleged above, Defendant Mountain West Council committed fraud by conduct and through explicit language.

109.

As alleged above, Defendant Mountain West Council had a duty to disclose its knowledge of the sexual abuse history in Scouting and the risk that Scouts such as Plaintiffs could be sexually abused by their Scout leaders, to Plaintiffs.

110.

As alleged above, Defendant Mountain West Council committed fraud through nondisclosure.

111.

As a direct result and consequence of Defendant Mountain West Council's fraud, Plaintiffs Mark Does 1-4, 8, and 10-12 suffered the injuries and incurred the damages described in paragraph 101.

**COUNT II**
**Plaintiffs Mark Does 5 and 9 Against**
**Defendant Mountain West Council and Church Defendants**

112.

Plaintiffs Mark Does 5 and 9 reallege and incorporate by reference paragraphs 1-59, 75-77, 88-90, 102, and 105.

113.

As alleged above, Defendant Mountain West Council and the Church Defendants committed fraud by active concealment.

114.

As alleged in paragraphs above, Defendant Mountain West Council and the Church Defendants committed fraud by conduct and through explicit language.

115.

As alleged above, Defendant Mountain West Council and the Church Defendants had a duty to disclose their knowledge of the sexual abuse history in Scouting and the risk that Scouts such as Plaintiffs could be sexually abused by their Scout leaders, to Plaintiffs.

116.

As alleged above, Defendant Mountain West Council and the Church Defendants committed fraud through nondisclosure.

/ / /

117.

As a direct result and consequence of Defendant Mountain West Council's and the Church Defendants' fraud, Plaintiffs Mark Does 5 and 9 suffered the injuries and incurred the damages described in paragraph 102.

## COUNT III
## Plaintiff Mark Doe 6 against Defendant Inland NW Council

118.

Plaintiff Mark Doe 6 realleges and incorporates by reference paragraphs 1-55, 78-80, 103, and 105.

119.

As alleged above, Defendant Inland NW Council committed fraud by active concealment.

120.

As alleged above, Defendant Inland NW Council committed fraud by conduct and through explicit language.

121.

As alleged above, Defendant Inland NW Council had a duty to disclose its knowledge of the sexual abuse history in Scouting and the risk that Scouts such as Plaintiffs could be sexually abused by their Scout leaders, to Plaintiff Mark Doe 6.

122.

As alleged above, Defendant Inland NW Council committed fraud through nondisclosure.

123.

As a direct result and consequence of Defendant Inland NW Council's fraud, Plaintiff Mark Doe 6 suffered the injuries and incurred the damages described in paragraph 103.

**COUNT IV**
**Plaintiff Mark Doe 7 Against Defendant Mountain West Council,**
**Defendant Grand Teton Council, and Church Defendants**

124.

Plaintiff Mark Doe 7 realleges and incorporates by reference paragraphs 1-59, 81-84, 104, and 105.

125.

As alleged above, Defendant Mountain West Council, Defendant Grand Teton Council, and the Church Defendants committed fraud by active concealment.

126.

As alleged in paragraphs above, Defendant Mountain West Council, Defendant Grand Teton Council, and the Church Defendants committed fraud by conduct and through explicit language.

127.

As alleged above, Defendant Mountain West Council, Defendant Grand Teton Council, and the Church Defendants had a duty to disclose their knowledge of the sexual abuse history in Scouting and the risk that Scouts such as Plaintiffs could be sexually abused by their Scout leaders, to Plaintiffs.

128.

As alleged above, Defendant Mountain West Council, Defendant Grand Teton Council, and the Church Defendants committed fraud through nondisclosure.

/ / /

/ / /

/ / /

129.

As a direct result and consequence of Defendant Mountain West Council, Defendant Grand Teton Council, and the Church Defendants' fraud, Plaintiff Mark Doe 7 suffered the injuries and incurred the damages described in paragraph 104.

## SECOND CLAIM FOR RELIEF
### *Constructive Fraud*

### COUNT I
### Plaintiffs Mark Does 1-4, 8, and 10-12 Against Defendant Mountain West Council

130.

Plaintiffs Mark Does 1-4, 8, and 10-12 reallege and incorporate by reference paragraphs 1-55, 60-74, 85-87, 91-100, 101, and 105.

131.

As alleged above, Defendant Mountain West Council committed constructive fraud.

132.

As a direct result and consequence of Defendant Mountain West Council's constructive fraud, Plaintiffs Mark Does 1-4, 8, and 10-12 suffered the injuries and incurred the damages described in paragraph 101.

### COUNT II
### Plaintiffs Mark Does 5 and 9 Against
### Defendant Mountain West Council and Church Defendants

133.

Plaintiffs Mark Does 5 and 9 reallege and incorporate by reference paragraphs 1-59, 75-77, 88-90, 102, and 105.

/ / /

134.

As alleged above, Defendant Mountain West Council and Church Defendants committed constructive fraud.

135.

As a direct result and consequence of Defendant Mountain West Council's and the Church Defendants' constructive fraud, Plaintiffs Mark Does 5 and 9 suffered the injuries and incurred the damages described in paragraph 102.

**COUNT III**
**Plaintiff Mark Doe 6 Against Defendant Inland NW Council**

136.

Plaintiff Mark Doe 6 realleges and incorporates by reference paragraphs 1-55, 78-80, 103, and 105.

137.

As alleged above, Defendant Inland NW Council committed constructive fraud.

138.

As a direct result and consequence of Defendant Inland NW Council's constructive fraud, Plaintiff Mark Doe 6 suffered the injuries and incurred the damages described in paragraph 103.

**COUNT IV**
**Plaintiff Mark Doe 7 Against Defendant Mountain West Council,**
**Defendant Grand Teton Council, and Church Defendants**

139.

Plaintiff Mark Doe 7 realleges and incorporates by reference paragraphs 1-59, 81-84, 104, and 105.

/ / /

/ / /

COMPLAINT - 36

140.

As alleged above, Defendant Mountain West Council, Defendant Grand Teton Council, and Church Defendants committed constructive fraud.

141.

As a direct result and consequence of Defendant Mountain West Council, Defendant Grand Teton Council, and Church Defendants' constructive fraud, Plaintiff Mark Doe 7 suffered the injuries and incurred the damages described in paragraph 104.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1.      Non-economic damages and such other damages as are shown by the evidence by Defendant Mountain West Council for each Plaintiff Mark Does 1-4, 8, and 10-12 separately, the exact amounts to be determined by the jury at the time of trial;

2.      Non-economic damages and such other damages as are shown by the evidence by Defendant Mountain West Council and the Church Defendants, jointly and separately, for each Plaintiff Mark Does 5 and 9 separately, the exact amounts to be determined by the jury at the time of trial;

3.      Non-economic damages and such other damages as are shown by the evidence by Defendant Inland NW Council for Plaintiff Mark Doe 6, the exact amounts to be determined by the jury at the time of trial;

4.      Non-economic damages and such other damages as are shown by the evidence by Defendant Mountain West Council, Defendant Grand Teton Council, and the Church Defendants, jointly and separately, for Plaintiff Mark Doe 7, the exact amounts to be determined by the jury at the time of trial;

5.      For Plaintiffs' disbursements and incurred costs;

6.      Attorney fees; and

7.      For any other relief this Court deems just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

DATED this 27th day of October, 2020.


/s/ Gilion C. Dumas
Gilion C. Dumas, ISB #8176
**DUMAS & VAUGHN, LLC**

Andrew M. Chasan, ISB #2100
Timothy C. Walton, ISB #2170
**CHASAN & WALTON, LLC**

*Attorneys for Plaintiffs*

**COMPLAINT - 38**